UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

NATIONAL ROOFING INDUSTRY
PENSION FUND, NATIONAL ROOFING
INDUSTRY SUPPLEMENTAL PENSION
FUND, *and* ROOFERS RESEARCH AND
EDUCATION TRUST,

               Plaintiffs,

    v.

JIC CONSTRUCTION, LLC, *assumed
business name* STERLING-PACIFIC,

               Defendant.

Case No. 3:23-cv-00561-AR

**OPINION AND ORDER**

_____

**ARMISTEAD, United States Magistrate Judge**

      Plaintiffs are three Trust Funds: the National Roofing Industry Pension Fund (NRIPF),

the National Roofing Industry Supplemental Pension Fund (NRISPF), and the Roofers Research

and Education Trust (RRET). Defendant Sterling-Pacific is an employer and is obligated,

through its Collective Bargaining Agreement (CBA) with the union Roofer Local 49, to contribute to the Trust Funds. (Compl. ¶¶ 2-4, 7, ECF 1; CBA Article XIX §§ 1, 2 & Article XXI §§ 1-2, ECF 40-5.) Under the CBA, if Sterling-Pacific does not contribute to the Trust Funds by the twentieth day of the month that they are due, those obligations to contribute are delinquent and subject to liquidated damages[1] and interest at 12 percent per annum. (CBA Article XIX § 1 & Article XXI §§ 1-2; Compl. ¶ 9; Hutzenbiler Second Suppl. Decl. (Suppl. Decl.) ¶ 6, ECF 49.) The Trust Funds bring claims under 29 U.S.C. § 1132 of the Employee Retirement Income Security Act (ERISA) and 29 U.S.C. § 185 of the National Labor Relations Act (NLRA). (Compl. ¶ 1.) They allege that Sterling-Pacific failed to make required contributions to the Trust Funds, and seek to recover delinquent contributions, liquidated damages, and interest on the contributions owed, along with reasonable attorney fees and costs. (*Id.* ¶¶ 7, 9, 11.)

Although Sterling-Pacific was initially represented by counsel in this action, it fired its attorney, who then withdrew representation in May 2024. (ECF 25, 26.) After that, Sterling-Pacific stopped participating in this case, even after the court ordered Sterling-Pacific to provide a status report and notified it that it would be subject to an entry of default and default judgment if it did not retain counsel. (ECF 28, 30.) Sterling-Pacific did not obtain counsel and, on the Trust Funds' motion, the court struck Sterling-Pacific's answer and directed the clerk to enter default against it. (ECF Nos. 33, 35, 36.) The Trust Funds now move for default judgment. (Am. Mot.,

---

[1] The CBA lists liquidated damages at 20 percent. (CBA Article XIX § 1 & Article XXI § 12.) Because the amended motion for default judgment seeks liquidated damages at 10 percent (Am. Mot. at 2, ECF 48), the court uses that percentage to calculate liquidated damages.

ECF 48.) As explained below, the Trust Funds' motion is GRANTED, except that the amount of damages is reduced, as explained below.

## DISCUSSION

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. Whether to enter default judgment lies within the court's discretion. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) ("A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986))). Although the court must accept as true all well-pleaded facts in the complaint, it does not accept as admitted facts that are not well-pleaded, conclusions of law, or facts relating to the amount of damages, *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007); *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). Any default judgment awarded must not differ in kind or exceed in amount what is demanded in the pleadings. FED. R. CIV. P. 54(c).

### A.    *Jurisdiction*

The district court has an affirmative duty to examine its jurisdiction when default judgment is sought. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). A default judgment is void if the district court lacks subject-matter or personal jurisdiction. *See Chambers v. Knight*, 20-56141, 2021 WL 4811360, at *1 (9th Cir. Oct. 15, 2021) (holding default judgment void for lack of subject matter jurisdiction).

The Trust Funds allege claims under 29 U.S.C. § 1132 and 29 U.S.C. § 185. Section 1132(e)(1) provides federal district courts with jurisdiction over any claims brought under

§ 1132. Section 185 likewise provides district courts with subject matter jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185; *see also Loc. 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 984 (9th Cir. 1999) (Section 185 provides for subject matter jurisdiction in claim by plans). This action was brought for a violation of the CBA—a contract between Sterling-Pacific as an employer and Local Roofer 49 as a union—and the fact that the Trust Funds were not actual signees to the CBA "is inconsequential, given the object of the lawsuit." *Loc. 159*, 185 F.3d at 984. Accordingly, the court has jurisdiction under both § 1132(e)(1) and § 185.

## B.    *Service of Process*

If the party against whom default judgment is requested has not been properly served and has not waived service, the district court cannot render judgment. *S.E.C. v. Ross*, 504 F.3d 1130, 1138-39 (9th Cir. 2007). That means that, before the court enters a default judgment, it is responsible for determining whether the service of process on the party against whom default judgment is sought was adequate. *See I.Q. Credit Union v. Khaleesi*, 3:22-CV-01226-YY, 2023 WL 5917715 at *2 (D. Or. Aug. 14, 2023) (so stating).

Sterling-Pacific has been properly served. Federal Rule of Civil Procedure 4(c)(1) requires that the defendant be served with a summons and a copy of the complaint. The Trust Funds served Sterling-Pacific's registered agent with a summons and complaint in April 2023, by leaving both with Barry P. Caplan, the "clerk on duty" at the office of Sussman Shank Registration Services, LLC, Sterling-Pacific's registered agent. (ECF 6; *see also* ECF 4.)

The Trust Funds have also complied with Rule 55 by previously requesting and receiving the clerk's entry of default. (ECF 33, 35); FED. R. CIV. P. 55(a)(1). The Trust Funds served their motion to strike, motion for entry of default, motion for default judgment, and amended motion for default judgment on Sterling-Pacific by mail.[2]

## C.    *Damages*

A default judgment requires Trust Funds to prove that they are entitled to the damages sought. *See TWC Int'l v. Greene*, 889 F.2d 1096 (9th Cir. 1989) (affirming district court's determination of damages based on written affidavit and oral testimony). On entry of default, the factual allegations in the complaint are taken as true, except for the allegations relating to damages. *Geddes*, 559 F.2d at 560.

The Trust Funds have proven that they are entitled to damages sought for delinquent contributions, liquidated damages, and interest. The Trust Funds assert that they are entitled to $18,114.80 in delinquent contributions, $1,811.48 in liquidated damages (ten percent of the delinquent contributions), and $3,665.65 in interest (twelve percent per annum of delinquent contributions). (Suppl. Decl. ¶ 6; Am. Mot. at 2, ECF 48.) Although that amount differs from the amount originally requested in the complaint, (Compl. ¶ 9), it neither differs in the kind of damages nor exceeds the amount requested in the complaint. FED. R. CIV. P. 54(c). Sterling-

---

[2]    The Trust Funds mailed those motions to the address provided by Sterling-Pacific's attorney in his motion to withdraw, which was also served on Sterling-Pacific by mail and email. (ECF 25 at 2-3; ECF 25-1 at 2-3.) The court notified Sterling-Pacific by mail and email when its responses to each of the Trust Funds' motions was due. (ECF 34, 42.) The court also notified Sterling-Pacific by mail and email of its order on the motion to strike and the motion for entry of default. (ECF 35, 36, 37.)

Pacific must, as mandated by the CBA, pay to all three Trust Funds any delinquent contributions, along with liquidated damages and interest. (CBA Article XIX § 1, 2 (NRIPF & NRISPF) & Article XXI § 1-2 (RRET).) The Trust Funds have identified the relevant contribution requirements between April 2018-July 2019 (Suppl. Decl. Ex. J, ECF 49-1), along with an audit explaining the number of hours worked during those periods (Hutzenbiler Decl. Ex. E, ECF 40-6). And the Trust Funds have explained their methods of calculating damages based on contribution requirements and hours worked. (Suppl. Decl. ¶¶ 3-4.) The court has reviewed the record and finds that the Trust Funds have proven that they are entitled to $23,591.93 in delinquent contributions, liquidated damages, and interest.

The Trust Funds are also entitled to "reasonable attorney fees" under the trust documents for the NRIPF. (Hutzenbiler Decl., Ex. A at 1, ECF 40-1.) Although the NRISPF and the RRET agreements do not provide for attorney fees, the Trust Funds bring a single claim as to delinquent contributions for all three trusts, based on the same facts and legal theories, making the reduction of attorney fees based on specific work related to each agreement inappropriate. *Greater L.A. Council on Deafness v. Cmty. Television of S. Cal.*, 813 F.2d 217, 222 (9th Cir. 1987). Accordingly, the court will award reasonable attorney fees and costs incurred by counsel for the entire action.

The Trust Funds request a total of $3,946 in attorney fees, for both attorney and paralegal/assistant work. (Am. Mot. at 2; Billing Log at 1-2, ECF 47-2.) The Trust Funds' billing log lists three people who worked on the action: "D. Hutzenbiler," "A. Toney-Noland," and "S. Harder." (Billing Log at 1-2.) The court will first address attorney work by Hutzenbiler and

Toney-Noland, for which the Trust Funds seek $3,196. (*Id.*) "S. Harder" appears to be either a paralegal or legal assistant and will be analyzed separately.

The Trust Funds' billing records show that they are entitled to the amount requested for attorney work. To determine an award of reasonable attorney fees, the court uses the "lodestar amount," which is the hours reasonably expended on the litigation times a reasonable hourly rate. *Greater L.A. Council on Deafness*, 813 F.2d at 221. The Trust Funds' attorney Daniel Hutzenbiler, who has sixteen years of experience working with ERISA collection work, worked a total of 13.6 hours at a rate of $210/hour (billing $2,856), and attorney Andrew Toney-Noland, who has an unknown amount of experience, worked a total of 1.7 hours at $200/hour (billing $340). (Atty. Fee Decl. ¶ 2, ECF 47; Billing Log at 1-2.) The court finds the proposed hourly rates reasonable considering the attorneys' experience and comparable rates in the state. *See* DEBI ELLIOT ET AL., OREGON STATE BAR 2022 ECONOMIC SURVEY REPORT OF FINDINGS 42-45 (2022); (ECF 47-1 at 1-2). Also, having reviewed the detailed billing invoices submitted by counsel, the court finds that the hours expended are reasonable. (*See* Billing Log at 1-2.) In total, Trustees have shown they are entitled to their requested $3,196 for attorney work.

As to paralegal or assistant fees, the Trust Funds have not proven that they are entitled to the full amount requested. Although work by paralegals or legal assistants can be compensated as part of attorney fees, "[c]lerical and secretarial work are considered overhead expenses and are not compensable as attorney's fees." *Anderson v. Ross Island Sand & Gravel Co.*, 3:18-CV-00549-SB, 2018 WL 3947018, at *5 (D. Or. July 11, 2018) (disallowing, on default judgment, fees for clerical work by legal assistant, otherwise allowing fees for legal assistant work),

*adopted by* 2018 WL 3946531 (Aug. 15); *see also Young v. Sundown Elec. Co.*, 3:14-cv-00729-HZ, 2014 WL 4639881, at *3 (D. Or. Sept. 16, 2014) (disallowing, on default judgment, all fees for legal assistant because "all of her work was clerical in nature"); *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989) ("[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them.").

Preparing or finalizing materials for filing, preparing and serving summonses, and reviewing and proofreading documents are considered "purely clerical" tasks. *Neil v. Comm'r of Soc. Sec.*, 495 F. App'x 845, 847 (9th Cir. 2012) (holding that district court did not abuse its discretion in declining to award attorney fees for "purely clerical tasks such as filing documents and preparing and serving summons"); *Taleff v. Sw. Airlines Co.*, 11-16173, 2013 WL 12581383, at *3 (9th Cir. Mar. 21, 2013) (disallowing hours billed for "prepar[ing] materials for filing" because "[f]iling is clerical work that may not be billed at attorneys' hourly rates"); *Frevach v. Multnomah Cnty. Dep't of Envt'l Servs.*, CV-99-1295-HU, 2001 WL 34039113, at *12 (D. Or. Dec. 18, 2001) (holding that "proofreading documents, indexing documents, and assembling documents" were clerical tasks); *Young*, ECF 9-4 at 1 & 2014 WL 4639881, at *3 (excluding as "clerical" time spent finalizing, reviewing, preparing, and filing documents).

The Trust Funds seek $750 for 5 hours of paralegal or legal assistant work at a rate of $150/hour. (Billing Log at 1-2.) But some of the work for which they seek compensation is purely clerical and cannot be compensated as attorney fees. The Trust Funds' billing log has three entries for purely clerical tasks, and three entries in which clerical tasks were block billed

with nonclerical tasks. Those entries have been copied below, and clerical tasks have been

italicized.

| Date | Task | Time Expended (hrs) | Cost ($) |
|---|---|---|---|
| 4/13/23 | *Review and format complaint*; search Oregon business records for service address, *prepare civil cover sheet, summons, and corporate disclosure statement* | 1.5 | 225 |
| 4/17/23 | *Finalize documents for filing; File complaint, civil cover sheet, proposed summons, and corporate disclosure statement* | 0.8 | 120 |
| 4/18/23 | *Prepare and send documents for service* | 0.5 | 75 |
| 8/7/24 | *Finalize status report; efile with court and serve defendant* | 0.5 | 75 |
| 9/30/24 | *Review and finalize motion to strike; e-file same with court*; correspondence to defendant regarding motion and deadline for response to court | 0.4 | 60 |
| 2/18/25 | *Format and finalize default motion and declaration; mark exhibits for declaration*; draft proposed order; communicate with attorney Hutzenbiler regarding same; *finalize and efile*[3] *same with court*; submit proposed order to judge | 1.3 | 195 |
| | **TOTAL** | 5 | **750** |

(Billing Log at 1-2.)

     For the purely clerical entries on 4/17/23, 4/18/23, and 8/7/24, 1.8 hours of time was

billed. Those fees are disallowed. As to the clerical tasks that were block billed together with

nonclerical tasks on 4/13/23, 9/30/24, and 2/18/25, the court will divide the total number of tasks

on each date by the amount of time entered to determine the duration of each task and will

disallow the clerical tasks. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007)

(a district court has the "authority to reduce hours that are billed in block format[,]" because

---

[3]     The court treats "finaliz[ing]" and "efil[ing]" as two different tasks.

"block billing makes it more difficult to determine how much time was spent on particular activities"); *Sterling Sav. Bank v. Sequoia Crossing, LLC*, 09-555-AC, 2010 WL 3210855, at *5 (D. Or. Aug. 11, 2010) (the court divided the 1.6 hours that were block billed by the 6 tasks included, to determine each task took 0.27 hours). The 4/13/23 entry included five tasks at 1.5 hours, of which four were clerical (1.2) and one was nonclerical (0.3); the 9/30/24 entry included three tasks at 0.4 hours, of which one was clerical (0.13) and two were nonclerical (0.27); and the 2/18/25 entry included seven tasks at 1.3 hours, of which five were clerical (0.93) and two were nonclerical (0.37). Of the 3.2 hours that were block billed with clerical and nonclerical tasks together, 2.26 hours were clerical, and 0.94 hours were nonclerical. Accordingly, the Trust Funds have only shown that they are entitled to compensation for 0.94 hours of paralegal/legal assistant work.

The court must also assess the reasonableness of the requested rate for paralegal/legal assistant work. S. Harder worked on this action at a rate of $150/hour. (Billing Log at 1-2.) The Trust Funds, however, have failed to provide any information about S. Harder's work experience, education, or about the prevailing market rate for paralegals or legal assistants in the Portland area. Other courts in this district concluded in 2013 and 2018 that, without any information supporting a higher rate, a reduction to $50/hour for paralegal or legal assistant work was reasonable. *E.g.*, *Sterling Sav. Bank v. Derek L. Brown & Assoc., Inc.*, 3:10-cv-00674-BR, 2013 WL 164424, at *4 (D. Or. Jan 15, 2013) (reducing paralegal and assistant rate from between $50 and $175/hour to $50/hour because plaintiff did not provide any information as to experience of paralegals or assistants); *Anderson*, 2018 WL 3947018, at *5 (reducing legal

assistant rate from the $95/hour requested to $50/hour where plaintiffs "d[id] not provide any information about [legal assistant's] years of experience or training"). This court concludes that, given the lack of any support for a higher rate, only a rate of $75/hour is justified for work by S. Harder. At a rate of $75/hour for 0.94 hours, the Trust Funds have proven they are entitled to $70.50 in paralegal or legal assistant work.

Finally, the court considers the Trust Funds' requested costs. The Trust Funds are entitled to "costs of any litigation" under the NRIPF agreement. (Decl. Hutzenbiler, Ex. A at 1.) The Trust Funds claim costs totaling $549.02—comprised of a $402.00 court filing fee, $16.20 for certified mail postage, $1.50 for photocopies, and $129.32 for process server fees. (Billing Log at 1-2.) The court finds that each requested cost is reasonable in the context of this case.

In total, the Trust Funds have demonstrated that they are entitled to default judgment in the amount of $27,407.45—$23,591.93 for delinquent contributions, $3,266.50 in attorney fees for both attorney and paralegal/legal assistant work, and $549.02 in costs.

## D.    *Eitel Analysis*

The requirements of jurisdiction, service of process, and proof of damages being satisfied, the court turns to the factors laid out in *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) to determine whether default judgment is appropriate. Those factors are:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471-72.

The first *Eitel* factor favors the Trust Funds, who will be prejudiced if default judgment is not entered, as they lack an alternative means by which to resolve their claims. *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616-17 (9th Cir. 2016); *see also Garcia v. Pacwest Contracting, LLC*, 3:12-cv-01930-SI, 2016 WL 526236, at *3 (D. Or. Feb. 9, 2016) (finding prejudice where plaintiff lacked other avenues of recovery).

Considering the second and third *Eitel* factors—the merits of the claims and the sufficiency of the evidence—the court must accept as true all well-pleaded facts in the complaint. *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). The court must consider if, on those allegations, the Trust Funds have stated a claim on which they may recover. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). The second and third factors favor default judgment. The CBA requires Sterling-Pacific to pay contributions to the Trust Funds, (CBA Article XIX § 1 & Article XXI § 1-2) and the Trust Funds allege that Sterling-Pacific failed to do so. (Compl. ¶¶ 9-10). Therefore, the Trust Funds have stated a claim on which they may recover. The second and third *Eitel* factors favor default judgment.

The fourth *Eitel* factor requires the court to consider the amount of money at stake in relation to the seriousness of defendant's conduct. *NewGen*, 840 F.3d at 616; *Garcia*, 2016 WL 526236, at *3. Default judgment is discouraged where "the money at stake in the litigation is substantial or unreasonable." *Bd. of Trs. v. Core Concrete Const., Inc.*, 11-2532 LB, 2012 WL 380304, at *4 (N.D. Cal. Jan. 17, 2012). Here, the amount of money at issue—$27,407.45—is significant. But the amount is supported by the CBA and the Trust Funds' evidence documenting the wages due, the nonpayment of those wages based on hours worked, the agreements providing

for attorney fees and costs, liquated damages, and interest, and the billing log of attorney work. (CBA Article XIX § 1 & Article XXI § 2; Hutzenbiler Decl. Ex. E; Suppl. Decl. Ex. J; Billing Log at 1-2.) The Trust Funds' documentation of the wages due, amount worked, and method of calculation "establishes that the sum of money at stake is reasonable[.]" *Trs. of Glaziers v. Don's A-1 Glass Inc.*, 3:23-cv-00378-SB, 2023 WL 9110936, at *4 (D. Or. Dec. 5, 2023), *adopted by* 2024 WL 68359 (Jan. 5, 2024). Accordingly, this factor does not weigh against default judgment. *See, e.g.*, *Bd. of Trs. v. Core Concrete*, C 11-02532 LB, 2012 WL 380304, at *4 (N.D. Cal. Jan 17, 2012) (holding that the fourth factor did not weigh against default judgment in part because the amounts sought were "supported by the evidence"), *adopted by* 2012 WL 381198 (Feb. 6).

As to the fifth *Eitel* factor, which considers whether a dispute of material fact is likely, the record here does not raise any questions of material fact. *See Durland v. Straub*, 3:20-cv-00031-IM, 2022 WL 2704169, at *6 (D. Or. July 12, 2022) ("Where the plaintiff's complaint is well-pleaded and the defendant makes no effort to properly respond, the likelihood of disputed facts is very low." (simplified)). Although Sterling-Pacific did submit an Answer to the Complaint, that Answer has since been stricken, and in any case the Answer did not dispute the factual allegations underlying the Trust Funds' claims. (ECF 13, 35.) This factor favors default judgment.

The sixth *Eitel* factor, relating to defendant's excusable neglect, supports entering default judgment. Sterling-Pacific is aware of this action, as evidenced by its appearance through counsel in May 2023 and its participation through counsel in 2023. After Sterling-Pacific fired

Page 13 – OPINION AND ORDER
*National Roofing v. JIC Construction, LLC*, 3:23-cv-00561-AR

its attorney in early 2024, the court notified it that, as an LLC, it could only appear in federal court through counsel, and that a failure to retain counsel would subject it to entry of default and default judgment. (ECF 28.) Sterling-Pacific was given time to retain counsel and did not. (ECF 35.) Additionally, Sterling-Pacific has failed to respond to the Trust Funds' motions to strike, for entry of default, and for default judgment, despite each being served on its last known address, and despite the court sending orders relating to those motions to Sterling-Pacific by mail and email. (*See* ECF 37, 42, 44, 46.) This factor favors default judgment.

The seventh and final *Eitel* factor "examines whether the policy of favoring a decision on the merits precludes entry of default judgment." *Cove Invs. LLC v. Vessel-Cordelie*, 2019 WL 343423, at *5 (N.D. Cal. Jan. 28, 2019) (citing *Eitel*, 782 F.2d at 1472 ("Cases should be decided on their merits whenever reasonably possible.")). But "this preference [for a decision on the merits], standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177. Because Sterling-Pacific has stopped participating in this case and its Answer has been stricken, a decision on the merits is "impractical, if not impossible." *Id.*

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

\ \ \ \ \

**CONCLUSION**

The Trust Fund's Motion for Default Judgment (ECF 48) is GRANTED, except that the amount of damages is reduced, as explained above. The Trust Funds have demonstrated that they are entitled to $27,407.45—$23,591.93 for delinquent contributions, $3,266.50 in attorney fees, and $549.02 in costs.

DATED: May 16, 2025

_____/s/ Jeff Armistead_____
JEFF ARMISTEAD
United States Magistrate Judge